Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2756 | **DATE** | 7/2/2002 |
| **CASE TITLE** | STEWART vs. INTERNATIONAL TRUCK AND ENGINE CORP | | |



**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. This action is dismissed in its entirety. All other pending motions are moot. All previously set dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 19 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/2/2002 | |
| | | | date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COZINE STEWART,

    Plaintiff,

v.

INTERNATIONAL TRUCK AND,
ENGINE CORPORATION F/K/A
NAVISTAR,

    Defendant.

No. 01 C 2756

**DOCKETED**
JUL - 2 2002

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On April 18, 2001, pro se plaintiff Cozine Stewart ("Stewart") filed a single-count complaint against defendant International Truck and Engine Corporation f/k/a Navistar, ("Navistar") alleging that he was terminated from his employment with Navistar on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. As of the date of this opinion, Stewart has not responded to defendant's motion, despite being ultimately represented by counsel and given an extension of time. Having considered the matter fully, for the reasons stated herein, defendant's motion for summary judgment is granted.

1

# STATEMENT OF FACTS[1]

On April 9, 1968, Stewart began working for Navistar. Navistar is a private manufacturer of buses, trucks and engines. Navistar's Melrose Park, Illinois, location where Stewart worked employs approximately 1,400 employees. Stewart was a member of the United Auto Workers, Local 6 ("Union") and just before his discharge, Stewart worked preparing engines for shipment. At all times relevant, Stewart's terms and conditions of employment were covered by a Collective Bargaining Agreement.

It is undisputed that during his tenure at Navistar, Navistar terminated and then reinstated Stewart about twenty times. Most of these terminations were for absenteeism and for failing to substantiate absences. Specifically, on February 1, 1999, Navistar terminated Stewart's employment for being absent from work for five consecutive days without reporting. Additionally, Navistar stated that Stewart was discharged for accepting but failing to report for overtime and for physical threats made by Stewart to a supervisor.

Stewart filed a grievance with the Union and a hearing was held on February 23, 1999 at which time Stewart's discharge was upheld. The Union then requested an informal meeting which was held on May 21, 1999. During the informal meeting, the Union offered Stewart's drug use as a circumstance leading to his absenteeism and assured Navistar that Stewart had recently and successfully completed a drug treatment program. Upon the Union's assurance, Navistar agreed to consider Stewart's reinstatement contingent on Stewart passing certain drug tests.

In October 1998, Navistar instituted the use of hair testing for drug use for all new applicants

---

[1]The following facts are undisputed and are from the defendant's Local Rule 56.1(a) statement of material facts and accompanying exhibits.

given a conditional offer of employment and in May 1999, Navistar instituted hair testing on all current employees facing discipline or reinstatement related to the use of illegal drugs. Hair testing or psychemedics requires the collection of a sample of hair from either the head, nape or body of the application. The collected sample is then forwarded to a laboratory for drug analysis.

Pursuant to the informal meeting of May 21, 1999, Stewart signed consent forms dated May 21, 1999 for both a urinalysis and a hair test. Stewart's urinalysis returned negative. Stewart's hair test returned inconclusive due to insufficient hair sample. After sufficient time had passed to ensure that all previous drugs had passed through Stewart's system, Stewart signed another consent form for another hair test on July 19, 1999. The result of Stewart's second hair test was positive and Navistar did not reinstate Stewart as a result.

Stewart's grievance then proceeded to the next step in the grievance process and during the course of a July 27, 2000, grievance meeting, the Union and Navistar discussed reinstating Stewart on a Last Chance Agreement. This Last Chance Agreement required that Stewart pass a substance abuse test during the week of August 21, 2000 prior to being reinstated and pass a drug screening every quarter after reinstatement. Stewart signed the Last Chance Agreement on August 22, 2000. Stewart then consented to a drug test and a hair sample was taken. The results from this first hair test was inconclusive. On September 1, 2000, Stewart consented to a second hair test which returned positive. Accordingly, Navistar did not reinstate Stewart.

The Union on behalf of Stewart unsuccessfully objected to Navistar's refusal to reinstate and Stewart original grievance went to arbitration on November 7, 2001. The arbitrator upheld Navistar's decision to refuse to reinstate Stewart, finding that Navistar properly refused to reinstate Stewart for his failure to pass the drug testing required by the Last Chance Agreement. Stewart filed

3

this suit on April 18, 2001.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995)

(hearsay testimony may not be considered in summary judgment proceeding).

Despite being fully appraised of his obligations[2] and ultimately being represented by counsel, Stewart failed to properly respond to this motion for summary judgment. Local Rule 56.1(b) states that a party opposing a motion filed pursuant to Fed.R.Civ.P. 56 shall file opposing affidavits, a supporting memorandum of law, and a concise response to each numbered paragraph of the movant's Local Rule 56.1(a) statement of uncontested facts. See Local Rule 56.1(b). Stewart did not submit a memorandum of law, nor did Stewart specifically respond to each numbered paragraph of defendant's 56.1(a) statement of facts.

Rule 56 of the Federal Rules of Civil Procedure does not authorize the granting of summary judgment as a sanction for failing to file a proper response to a motion for summary judgment. See Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993). Rule 56(e) permits summary judgment only "if appropriate - that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Id. Stewart's derelictions, however, are not without costs. By failing to file a proper Local Rule 56.1(b) statement, Stewart admits, in effect, to all factual assertions presented by the defendant. See Local Rule 56.1(b)(3)(B); Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 689 (7th Cir. 2000) (accepting as true all material facts set out in Local Rule 56.1(a) statement, where non-moving party has failed to comply with Local Rule 56.1(b)). As a result, this court must determine whether summary judgment is proper as a matter of law by reviewing the record and the facts as presented by defendant and by drawing all justifiable inferences in favor of Stewart. See Wienco, Inc. v. Katahn Associates, Inc.,

---

[2] The sufficiency of the notice provided to pro se litigant Stewart will be discussed fully below.

5

965 F.2d 565, 568 (7th Cir. 1992).

## ANALYSIS

I.  Notice to Pro Se Litigant Stewart.

The Federal Rules of Civil Procedure forbid a district court from acting on a summary judgment motion without giving the nonmoving party a reasonable opportunity to appropriately respond. Fed. R. Civ. P. 56. A motion for summary judgment should not be granted against a pro se litigant unless the pro se litigant receives clear notice of the need to file affidavits or other responsive materials and of the consequences of not responding. See Timms v. Frank, 953 F.2d 281, 284 (7th Cir. 1992). The United States Court of Appeals for the Seventh Circuit explains that this notice should come from opposing counsel and should include a short, plain statement of the need to respond to a summary judgment motion, giving both the text of Federal Rule of Civil Procedure 56(e) and an explanation of the rule in ordinary English. Id. If opposing counsel fails to provide the requisite notice then the district court should do so. Id.

In this case, Navistar filed its motion for summary judgment on May 17, 2002. Stewart was not represented by counsel when defendant filed this motion for summary judgment, therefore, defendant had a duty to appraise Stewart of his obligation to properly respond to this motion for summary judgment and if defendant neglected this duty then the duty to advise Stewart of the need to respond this motion would fall onto this court. At that time, however, no one advised Stewart of his obligation to properly respond to a motion for summary judgment. On June 7, 2002, when plaintiff's response to defendant's motion for summary judgment and Local Rule 56.1(b) statement was one week late, it came to this court's attention that attorney Robert M. Salzman was present at Stewart's deposition although no attorney appearance had been filed with this court. On June 17,

2002, Mr. Salzman filed an appearance on behalf of Stewart and this court granted Mr. Salzman's motion for an extension of time to file a response to defendant's motion for summary judgment to July 1, 2002. This court also mailed notice to Stewart as to his obligations to file a proper response to a motion for summary judgment pursuant to local rule 56.2.

Since subsequent to the filing of defendant's motion for summary judgment Stewart retained counsel and this court extended time by which Stewart through his counsel could properly respond to defendant's motion for summary judgment, no notice pursuant to Local Rule 56.2 was needed. Nonetheless, the notice this court mailed to Stewart pursuant to Local Rule 56.2 was clear and concise, and instructed Stewart on how to proceed in an attempt to defeat this motion for summary judgment. This court now will consider the merits of defendant's motion for summary judgment.

II. <u>Elements to a prima facie case of discrimination under Title VII, § 1981 and § 1983</u>

    A. Title VII

Under Title VII, in order to survive a motion for summary judgment, a plaintiff must establish a prima facie case of discrimination either by direct evidence or by the indirect method outlined first in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973)(applying the indirect method of proof in Title VII case). Under the <u>McDonnell Douglas</u> framework, a plaintiff bears the initial burden of producing evidence to sustain a prima facie case. <u>See Olsen v. Marshall & Isley Corp.</u>, 267 F.3d 597, 600 (7th Cir.2001). If and only if the plaintiff meets this burden, then the employer must then produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. <u>Olsen</u>, 267 F.3d at 600. If the employer offers a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext. <u>Id</u>. The ultimate burden of persuasion rests with the plaintiff to show

impermissible motive or intent.

In this case, Stewart alleges discrimination based on race but offers no direct evidence of discrimination. Lacking any direct evidence of racial animus, Stewart must rely on the burden-shifting framework of McDonnell Douglas. See e.g., Brummett v. Lee Enterprises, Inc., 284 F.3d 742, 744 (7th Cir. 2002). Under McDonnell Douglas, Stewart must establish four things, that: 1) he belongs to a protected class; 2) his performance met his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) similarly situated others not in his protected class received more favorable treatment. Brummett v. Lee Enterprises, Inc., 284 F.3d 742, 744 (7th Cir. 2002)(citation omitted). Upon review of Stewart's case, Stewart has failed to carry his initial burden of producing evidence to sustain a prima facie case of race discrimination.

Although it is undisputed that Stewart is a member of a protected class and that Stewart suffered an adverse employment action, it is also undisputed that Stewart was not meeting the legitimate expectations of his employer. The record in this case establishes that throughout Stewart's career Stewart was consistently absent or tardy to work without excuse. Furthermore, the record establishes that Stewart may have been using illegal narcotics while working for defendant. Under either scenario, absenteeism, tardiness, or illegal drug use fall below defendant's legitimate expectations. Additionally, the record in this case demonstrates that similarly situation persons not in Stewart's protected class were not treated more favorably by defendant. The record reveals that Navistar treated others outside of Stewart's protected class in manner similar to how Navistar treated Stewart both during Stewart's termination and during the events and circumstances that lead to Stewart not being reinstated.

Upon an acute review of the record, taking all reasonable inferences in favor of Stewart, there

is not a scintilla of evidence upon which a reasonable finder of fact could find that the defendant discriminated against Stewart on the basis of race. Accordingly, summary judgment in favor of the defendant is necessary as a matter of law.

Despite the fact that Stewart has failed to carry his initial evidentiary burdens, defendant nonetheless produces a legitimate, nondiscriminatory reason as to why Stewart was terminated. The undisputed evidence in this case establishes that on February 1, 1999, Navistar terminated Stewart's employment for being absent from work for five consecutive days without reporting. Stewart does not dispute defendant's reasons for terminating his employment. Furthermore, the undisputed evidence in this case establishes that Navistar failed to reinstate Stewart because Stewart failed to successfully complete a drug screening. In light of these legitimate, nondiscriminatory reasons, Stewart has not produced any evidence in the record to establish any type of discriminatory animus behind defendant's actions or reasoning.

In his complaint, Stewart also alleges that Navistar's practice of using hair samples for drug screening has an adverse impact of individuals of African-American descent. "[T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988). A prima facie case of disparate impact is established by showing through significant statistical disparity that a facially neutral employment practice has a discriminatory impact on a protected class. Watson, 108 S.Ct. at 2793; Morgan v. Harris Trust and Sav. Bank of Chicago, 867 F.2d 1023, 1027 (7th Cir. 1989). The burden then shifts to the employer to show that the employment practice bears a manifest relationship to the employment in question. Watson, 108

S.Ct. at 2790; Morgan, 867 F.2d at 1027. Plaintiff then may show that defendant's business necessity claim is pretextual. Morgan, 867 F.2d at 1027-28. In light of defendant's motion for summary judgment, Stewart has simply rested on his allegations that defendant's practice of using hair samples has a disparate impact. Stewart has presented no statistical evidence in support of his disparate impact claim, and this lack of statistical evidence is fatal to Stewart's disparate impact claim. See e.g., Morgan v. Harris Trust and Sav. Bank of Chicago, 867 F.2d 1023, 1028 (7th Cir.1989).

B. Section 1981

Stewart's § 1981 claim must fail because he has failed to establish a prima facie case of racial discrimination under Title VII. The same standards governing liability under Title VII applies to section 1981. Vakharia v. Swedish Covenant Hosp., 190 F.3d 799, 806 (7th Cir. 1999). Furthermore, in Patterson v. McLean Credit Union the Supreme Court stated that § 1981 protects only the rights to make and enforce contracts and does not cover "conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." 491 U.S. 164, 176-77, 109 S.Ct. 2363, 2372-73 (1989). In this case, Stewart has not produced evidence in the record that establishes that defendant prohibited Stewart make or enforce any contract, see e.g., Jones v. Merchants Nat. Bank & Trust Co. of Indianapolis, 42 F.3d 1054, 1059 (7th Cir. 1994), therefore, as Stewart's Title VII claim fails so must his § 1981 claim.

C. Section 1983

A cause of action under § 1983 requires a plaintiff to demonstrate that he was deprived of a right secured by the Constitution or federal law at the hand of someone acting under color of law.

Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998). A private individual acts under color of law if there was a concerted effort between that individual and a state actor. Id. Establishing § 1983 liability through a conspiracy theory requires a plaintiff to demonstrate that (1) the private individual reached an understanding with a state official to deprive the plaintiff of his constitutional rights; or (2) the private individual was a willful participant in joint activity with the state or its agents to deprive the plaintiff of his constitutional rights. Id. In this case, the sole defendant, Navistar, is not a state actor and Stewart has presented absolutely no evidence in the record demonstrating that Navistar, as a private actor, reached an understanding with a state actor to deprive Stewart of his constitutional rights or that Navistar, as a private individual, was a willful participant in a joint activity with a state actor depriving Stewart of his constitutional rights. Accordingly, summary judgment on Stewart's § 1983 claim in favor of Navistar must be granted as a matter law.

## CONCLUSION

For all of the reasons stated above, defendant's motion for summary judgment is GRANTED. This case is dismissed in its entirety with prejudice. All previous dates are stricken. All pending motions are moot.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: July 2, 2002